JS 44 (Rev. 12/12)(Modified by FLSD - April 29, 2015)  **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)* **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS
Callaway Marine Technologies, Inc.

### DEFENDANTS
Tetra Tech, Inc. and Fidelity and Deposit Company of Maryland

**(b)** County of Residence of First Listed Plaintiff: Palm Beach
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Los Angeles
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
David M. Adelstein, Esq.
Kirwin Norris, P.A.
15 W. Church Street, Ste 301

Attorneys *(If Known)*

**(d)** Check County Where Action Arose: ☒ MIAMI-DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE ☐ HIGHLANDS

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question *(U.S. Government Not a Party)*
☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)* and One Box for Defendant)
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☒ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**TORTS**
**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Med. Malpractice

**PERSONAL INJURY**
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**
**Habeas Corpus:**
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence

**Other:**
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee – Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed (See VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district *(specify)*
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment
☐ 8 Remanded from Appellate Court

## VI. RELATED/ RE-FILED CASE(S)
*(See instructions)*:
a) Re-filed Case ☐ YES ☒ NO    b) Related Cases ☐ YES ☒ NO
JUDGE                                DOCKET NUMBER

## VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1332 - Contract Indebtness
LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

**ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE**

DATE: March 9, 2016
SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          IFP          JUDGE          MAG JUDGE

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.    (a) Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence.  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys.  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.    Jurisdiction**.  The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.

United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; federal question actions take precedence over diversity cases.)

**III.   Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.   Nature of Suit**.  Place an "X" in the appropriate box.  If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit.  If the cause fits more than one nature of suit, select the most definitive.

**V.    Origin**.  Place an "X" in one of the seven boxes.

Original Proceedings.  (1) Cases which originate in the United States district courts.

Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.

Refiled (3) Attach copy of Order for Dismissal of Previous case. Also complete VI.

Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.

Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.  When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment.  (7) Check this box for an appeal from a magistrate judge's decision.

Remanded from Appellate Court. (8) Check this box if remanded from Appellate Court.

**VI.   Related/Refiled Cases**.  This section of the JS 44 is used to reference related pending cases or re-filed cases. Insert the docket numbers and the corresponding judges name for such cases.

**VII.  Cause of Action**.  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity**.     Example: U.S. Civil Statute: 47 USC 553
                                                            Brief Description: Unauthorized reception of cable service

**VIII. Requested in Complaint**.  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand.  In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**Date and Attorney Signature**.  Date and sign the civil cover sheet.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CALLAWAY MARINE TECHNOLOGIES, INC.,

    Plaintiff.

v.  Case No.:

TETRA TECH, INC. and FIDELITY AND DEPOSIT
COMPANY OF MARYLAND,

    Defendants.
_____/

## COMPLAINT

Plaintiff Callaway Marine Technologies, Inc. ("Callaway") sues Defendants Tetra Tech, Inc. ("Tetra Tech") and Fidelity and Deposit Company of Maryland ("Fidelity") and states:

### Parties, Jurisdiction and Venue

1. This is an action for principal damages in excess of $75,000 exclusive of interest, costs and attorneys' fees.

2. Plaintiff Callaway is a Florida corporation with its principal place of business in Florida.

3. Defendant Tetra Tech is a Delaware corporation with its principal place of business in California. Tetra Tech is authorized to transact business in Florida.

4. Defendant Fidelity is a Maryland corporation with its principal place of business in Illinois. Fidelity is authorized to transact business in Florida.

5. This Court has diversity subject matter jurisdiction pursuant to 28 U.S.C. s. 1332.

6. Venue is proper in the Southern District, Miami Division, as the construction project at-issue is located in Miami and this is where causes of action accrued.

1

**Factual Background**

7. Tetra Tech entered into a subcontract with Great Lakes Dredge & Dock Company, LLC ("Great Lakes") to perform a scope of work for a construction project in Miami-Dade County owned by the United States Army Corps of Engineers. The construction project is commonly known as the Miami Harbor Deepening Phase 3 project (the "Project").

8. Tetra Tech, a subcontractor to Great Lakes, furnished Subcontract Payment Bond #09121485 issued by Fidelity (the "Payment Bond"). A copy of this Payment Bond is attached hereto as **Exhibit A**.

9. Tetra Tech entered into a subcontract with Callaway made August 5, 2013 (and executed November 15, 2013) to perform a portion of Tetra Tech's subcontract work (the "Subcontract"). Specifically, Callaway's scope of work pursuant to the Subcontract included placing limestone boulders to build up approximately 5.57 acres of low relief artificial reef and 3.71 acres of high relief artificial reef. The rock (limestone boulders) were supplied by Tetra Tech. A copy of the Tetra Tech-Callaway subcontract is attached hereto as **Exhibit B**. Hereinafter, Callaway's scope of work will be referred to as the "Rock Placement."

10. Tetra Tech broke up the Rock Placement into three locations: Section 1 consisted of 1.1 acres and sections 2 and 3 consisted of 8.2 acres.

11. Tetra Tech's obligations pursuant to the Subcontract included, without limitation:

> i. Suppling rock including any required shop drawings, submittals, approvals, and quality control (Subcontract, §1.1.A);
>
> ii. Supplying a suitable staging area that should be approximately 1 acre (Subcontract, §1.1.B);

    iii. Pay Callaway net 31 days or "on the 20th of the following month provided the invoice was received by the 20th of the previous month" (Subcontract, §3.3);

    iv. Furnish a sufficient quantity of rock at the staging area at all times so as not to cause a delay or suspension of the work (Subcontract, §4.8);

    v. Comply with a Limestone Placement Plan that, among other items, stated that the barge will transport approximately 800 tons of rock per load (Subcontract, Ex. A); and

    vi. Furnish interim surveys as called for in the contract documents (Subcontract, Ex. A).

12. Tetra Tech was also required to perform benthic resource surveys of the artificial reef placement areas to confirm there was no benthic hard-bottom resources inside of reef placement areas.

13. Callaway's scope of Rock Placement for Section 1 was scheduled to start in the winter months of 2013 (or during months where inclement weather can make it prohibitive to work in the water on a consistent basis). Based on this concern, on October 11, 2013, Callaway and Tetra Tech agreed to a schedule modification (known as Mod 1) to the Rock Placement that would allow Callaway, at its option, to potentially shut down work during winter months for weather considerations (*See* Subcontract, Ex. E). In other words, Callaway planned to continuously proceed with Rock Placement for <u>all</u> sections but had the option of mitigating costs and demobilizing after completion of Section 1 if the unknown and prolonged winter weather prohibited Callaway from effectively and safely placing rock in the water. A copy of Callaway-Tetra Tech dialogue is attached as **Exhibit C**.

14. On December 24, 2013, Callaway was issued a notice to proceed and directed to begin work on Section 1 of the Rock Placement (that had a 30 day duration). On December 28, 2013 Callaway and Tetra Tech discussed the schedule of Callaway's plan to continuously proceed with the Rock Placement:

Callaway: "To address your comment regarding the initial 1.1 acres [Section 1], construction efforts will not be limited to 1.1 acres [Section 1], but will continue until further notice."

Tetra Tech: "I appreciate the acknowledgement and update. I look forward to the initiation and continuation of reef construction for as long as the weather permits."

A copy of the Callaway-Tetra Tech dialogue is attached as **Exhibit D**.

15. In furtherance of Callaway's Rock Placement, Callaway had to incur labor and equipment costs including, without limitation (a) a barge to transport the limestone boulders (approximately 800 tons) to the designated reef placement areas; (b) a tug boat to transport the barge with the limestone boulders; (c) equipment such as an excavator and front end loaders to load the boulders on to the barge; (d) equipment such as loaders to place the limestone boulders; and (e) applicable personnel and operators at the staging area, tug boat and barge.

16. As Rock Placement began, Tetra Tech was unable to deliver sufficient rock to the staging area to allow continuous placement of rock. This prevented Callaway from transporting on the barge and placing a sufficient quantity of rock per load or finishing Section 1 within 30 days.

17. On February 10, 2014, during the course of Callaway's Rock Placement during a period of good weather, Tetra Tech unilaterally, arbitrarily, and indefinitely ceased all Rock

4

Placement and, thus, Callaway's operations, at the Project. Callaway immediately put Tetra Tech on notice of the cost impact associated with this cessation of work. A copy of this notice is attached hereto as **Exhibit E**.

18.     When Tetra Tech notified Callaway to cease Rock Placement, the barge had already been loaded with rock for purposes of placement.

19.     Tetra Tech, in demanding that Callaway cease all Rock Placement, never advised Callaway as to when Rock Placement would recommence or the specific basis as to why Rock Placement could not proceed to capitalize on the good weather (*e.g*., the next day, the next week, the next month, many months later, etc.).

20.     Indeed, Callaway proposes that the reason that Tetra Tech unilaterally, arbitrarily and indefinitely directed Callaway to cease Rock Placement was Tetra Tech's inability to supply sufficient rock in compliance with the Subcontract and in sufficient quantities to meet the schedule. A chart Callaway prepared reflects the daily and weekly tonnage of rock furnished by Tetra Tech. The chart shows that through stoppage on February 10, 2014, Tetra Tech did not furnish the required rock quantities to complete Section 1 within the 30 day schedule and on numerous days furnished no rock to the staging area at all. A copy of this chart is attached as **Exhibit F**.

21.     To support this, Tetra Tech's purchase order with one of its rock suppliers, Statewide Materials, Inc., (that was provided to Callaway) required:

> "Statewide shall be prepared to supply and deliver approximately 500-700 tons of stone per day, 6 days per week to the Staging Area at the Port of Miami."

A copy of a portion of Tetra Tech's Special Conditions for Limestone Boulders with Statewide is attached hereto as **Exhibit G**. Such requirement was not met during Section 1 as reflected in Exhibit F.

5

22. On February 20, 2014—the 10th day of work stoppage with no certainty as to when work will resume—Callaway notified Tetra Tech:

> We continue to incur cost every day with no idea of when we will resume work. To mitigate costs, McCulley [Callaway's subcontractor furnishing the tug and barge and loaders] is going to send the barge crew away and move the tug offsite so that the crew can be sent home. This is a potential set back that I would like to avoid. I would like to be able to tell them that we will continue work in the next few days as weather allows. Please advise.

A copy of this notification is attached as **Exhibit H**.

23. Callaway, in looking to mitigate standby costs associated with this work stoppage, was looking for direction from Tetra Tech relating to demobilizing and re-locating resources. However, Callaway could not relocate or demobilize the barge because it had rock belonging to Tetra Tech and the Project on it and Tetra Tech did not remove the rock from the barge.

24. Tetra Tech notified Callaway that a basis for it unilaterally stopping work was that it was unclear or it did not understand how to interpret / evaluate survey data of the Rock Placement.

25. Tetra Tech was required to obtain the survey data and was responsible for understanding the methodology used to survey the Rock Placement prior to the commencement of this work. Tetra Tech's inability or uncertainty as to how to interpret or evaluate the survey data should not have in good faith, or reasonably, warranted a complete and indefinite cessation of all Rock Placement and impact Callaway's scope of Rock Placement, especially while the good weather permitted the efficient, productive and timely placement of rock in the water.

26. The Rock Placement and cessation remained in effect (without any notification as to when Tetra Tech would allow work to recommence) until Tetra Tech finally authorized work to proceed 76 days later on or about April 27, 2014. Upon receiving this direction, however, Callaway had to re-mobilize equipment and resources back to the Project that had been

6

demobilized in order to mitigate standby costs due to the indefinite work stoppage. Callaway was not able to reasonably resume operations until on or about May 27, 2014. But, then, Tetra Tech failed to furnish any rock from May 28, 2014 through June 17, 2014 to the staging area (*see* Exhibit F); hence, there was a lack of rock to place.

27. Even after Callaway resumed Rock Placement operations, Tetra Tech still failed to furnish sufficient rock to place, with numerous days furnishing no rock at all.

28. On July 26, 2015, Callaway, among other items, notified Tetra Tech of costs Callaway incurred as the result of Tetra Tech's arbitrary and indefinite cessation and for its failure to furnish sufficient rock. A copy of this notification is attached as **Exhibit I**.

29. All conditions precedent to this action have occurred, have been performed, or have been waived.

30. Callaway has retained the undersigned counsel and has agreed to pay reasonable attorneys' fees.

## Count I – Breach of the Payment Bond
### (as to Tetra Tech and Fidelity)

31. The allegations in paragraphs 1-30 are incorporated herein.

32. The Payment Bond issued by Fidelity is a common law bond. Tetra Tech, as a subcontractor, did not furnish a statutory bond or a bond derived from a statute.

33. The Payment Bond defines a claimant as one having direct contract with the bond-principal, Tetra Tech, and allows claimants to sue on the bond. Callaway had a direct contract with Tetra Tech.

34. Tetra Tech has been on notice of the Callaway's damages associated with Tetra's Tech's unilateral and arbitrary work cessation and inability to furnish sufficient rock for the Rock Placement.

7

35. Tetra Tech has not paid Callaway amounts Callaway incurred pursuant to the Subcontract and in performing the Rock Placement.

36. Tetra Tech, as principal, and Fidelity, as surety, have breached the bond through non-payment to Callaway.

37. Callaway is entitled to its attorney's fees pursuant to Florida Statute s. 627.756 and s. 627.428

Wherefore, Callaway demands judgment against Tetra Tech and Fidelity, jointly and severally, for all damages associated with the breach of the common law Payment Bond, court costs, prejudgment interest, attorney's fees, and all other relief this Court deems just and proper.

### Count II – Breach of Contract
### (as to Tetra Tech)

38. The allegations in paragraphs 1-30 are incorporated herein.

39. Callaway and Tetra Tech entered into the valid Subcontract.

40. Tetra Tech materially breached the Subcontract through its failure to perform its contractual obligations set forth in paragraphs 11 and 12 above which have caused damage to Callaway.

41. Tetra Tech materially breached the Subcontract through its arbitrary, unreasonable, and unilateral cessation of the Rock Placement that caused damage to Callaway.

42. Tetra Tech has not paid Callaway amounts Callaway incurred in performing the Subcontract and the Rock Placement.

43. Tetra Tech, through its material breaches of the Subcontract, breached the implied covenant of good faith and fair dealing made part of every contract, and particularly, that it will perform its obligations in accordance with paragraphs 11 and 12 in good faith to protect parties reasonable performance expectations in the contract.

8

Wherefore, Callaway demands judgment against Tetra Tech for all damages flowing from Tetra Tech's breach of the Subcontract, court costs, prejudgment interest, and all other relief this Court deems just and proper.

### Count III- Negligent Misrepresentation
### (as to Tetra Tech)

44. The allegations in paragraphs 1-30 are incorporated herein.

45. This count is an alternative to Count II.

46. Tetra Tech, and specifically Eric Dohner, made false statements of material fact to Callaway that (a) Callaway would be allowed to place rock in the artificial reef placement areas continuously and that Callaway, at its option, could elect to demobilize in order to mitigate costs if prolonged inclement winter weather did not efficiently, timely and safely allow for Rock Placement; (b) Tetra Tech would supply sufficient quantity of rock per day since Callaway was required to furnish a barrage capable of transporting approximately 800 tons of rock per load; (c) Tetra Tech understood the methodology for how rocks would be surveyed for the designated high-relief reef locations and low-relief reef locations; and (d) it performed all surveys required to insure the protection of benthic resources in the artificial reef placement areas.

47. Tetra Tech, and specifically Eric Dohner, knew these representations were false, made the misrepresentations without knowledge of their truth or falsity, or should have known the representations were false since Tetra Tech (a) did not allow Callaway to continuously place rock and, instead, unilaterally, unreasonably, and arbitrarily ceased Rock Placement because it did not understand survey data and could not furnish sufficient rock; (b) never furnished sufficient quantities of rock notwithstanding Callaway furnishing a barge capable of transporting approximately 800 tons of rock per load; and (c) did not perform the Benthic Mapping Survey

9

since work had to stop (after the resumption of the work) due to concerns over locations where rock was designated to be placed.

48. Tetra Tech, and specifically Eric Dohner, made such representations prior to the Subcontract being signed on November 15, 2013 with the intent to induce Callaway to sign the Subcontract and commence with the Rock Placement since Tetra Tech was required to proceed with this work and needed Callaway to perform this scope of work for Tetra Tech.

49. Callaway justifiably relied on Tetra Tech's misrepresentations in signing the Subcontract and commencing with the Rock Placement causing damage to Callaway.

Wherefore, Callaway demands judgment against Tetra Tech for all damages flowing from Tetra Tech's negligent misrepresentation, court costs, prejudgment interest, and all other relief this Court deems just and proper.

### Demand for Trial by Jury

Callaway demands a trial by jury on all such triable issues.

Dated this 9th day of March, 2016

    Respectfully Submitted,

    /s/ David Adelstein
    **DAVID M. ADELSTEIN**
    Fla. Bar No. 647314
    KIRWIN NORRIS, P.A.
    15 W. Church Street, Suite 301
    Orlando, FL 32801
    P (407) 740-6600
    P (954) 759-0026
    dma@kirwinnorris.com

### CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System.

                                                  KIRWIN NORRIS, P.A.

                                                  /s/ David Adelstein
                                                  **DAVID M. ADELSTEIN**
                                                  Fla. Bar No. 647314
                                                  15 W. Church Street, Suite 301
                                                  Orlando, FL 32801
                                                  P (407) 740-6600
                                                  P (954) 759-0026
                                                  dma@kirwinnorris.com

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Southern District of Florida  ▾

| | |
|---|---|
| CALLAWAY MARINE TECHNOLOGIES, INC. <br><br> *Plaintiff(s)* <br> v. <br> TETRA TECH, INC. and FIDELITY AND DEPOSIT COMPANY OF MARYLAND <br><br> *Defendant(s)* | ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. |

**SUMMONS IN A CIVIL ACTION**

To: *(Defendant's name and address)* FIDELITY AND DEPOSIT COMPANY OF MARYLAND
CHIEF FINANICAL OFFICER
200 E. GAINES STREET
TALLAHASSEE, FL 32399-0000

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: David M. Adelstein, Esquire
Kirwin Norris, P.A.
15 W. Church Street, Suite 301
Orlando, FL  32801

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____    _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❐ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❐ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

❐ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❐ I returned the summons unexecuted because _____ ; or

❐ Other *(specify):*

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Southern District of Florida

| | |
|---|---|
| CALLAWAY MARINE TECHNOLOGIES, INC. <br><br> *Plaintiff(s)* <br><br> v. <br><br> TETRA TECH, INC. and FIDELITY AND DEPOSIT COMPANY OF MARYLAND <br><br> *Defendant(s)* | Civil Action No. |

**SUMMONS IN A CIVIL ACTION**

To: *(Defendant's name and address)*  TETRA TECH, INC.
CT CORPORATION SYSTEM
1200 S. PINE ISLAND ROAD
PLANTATION, FL 33324

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  David M. Adelstein, Esquire
Kirwin Norris, P.A.
15 W. Church Street, Suite 301
Orlando, FL  32801

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____                           _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❐ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❐ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

❐ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❐ I returned the summons unexecuted because _____ ; or

❐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: